In re CHICAGO, R. I. & P. RY. CO.

BEEBE et al. v. CHESTON et al.

CHASE NAT. BANK OF CITY OF NEW YORK v. SAME.

Nos. 6802, 6868, 6869 and 6803, 6870, 6871.

Circuit Court of Appeals, Seventh Circuit.

Dec. 12, 1939.

Shearman & Sterling, of New York City, (Sanford H. E. Freund and John A. Hill, both of New York City, of counsel), for appellant National City Bank of New York.

Charles R. Lowther, of New York City, Florence De Haas Dembitz and Cassius M. Clay, both of Washington, D. C., George F. James and James A. Sprowl, both of Chicago, Ill., M. L. Bell, of New York City, Cyrus Adams, of Chicago, Ill., Jesse E. Waid, Clifton P. Williamson, Edward W. Bourne, and Clyde W. Sorrell, all of New York City, Frank H. Towner, of Chicago, Ill., Thomas Epstein, E. L. Williams, Samuel A. McCain, Wright, Gordon, Zachry & Parlin, Cook, Nathan, Lehman & Greenman, and Auchincloss, Alley & Duncan, all of New York City, Isham, Lincoln & Beale, of Chicago, Ill., Alexander & Green, of New York City, and Winston, Strawn & Shaw, of Chicago, Ill., for appellees.

In cases Nos. 6803, 6870, 6871:

Poppenhusen, Johnston, Thompson & Raymond, of Chicago, Ill., and Milbank, Tweed & Hope, of New York City, Anan Raymond, of Chicago, Ill., and Arthur A. Gammell, of New York City (Frederick W. Wood, of New York City, of counsel), for appellant.

Charles R. Lowther and Wilkie Bushby, both of New York City, Irwin T. Gilruth and Cyrus H. Adams, both of Chicago, Ill., M. L. Bell, of New York City, W. F. Peter, of Chicago, Ill., Edward L. Williams, of New York City, Cassius M. Clay and Florence De Haas Dembitz, both of Washington, D. C., James A. Sprowl and George F. James, both of Chicago, Ill., Jesse E. Waid, Clifton P. Williamson, and Edward W. Bourne, all of New York City, Frank H. Towner, of Chicago, Ill., Thomas Epstein, Samuel A. McCain, and Auchincloss, Alley & Duncan, all of New York City, and Isham, Lincoln & Beale, of Chicago, Ill., for appellees.

In cases Nos. 6802, 6868, 6869:

Root, Clark, Buckner & Ballantine, of New York City (Elihu Root, Jr., and Wilkie Bushby, both of New York City, of counsel), for appellant Protective Committee for Chicago, R. I. & P. Ry. Co.'s First and Refunding Mortgage 4% Gold Bonds and Secured 4½% Gold Bonds, Series A.

Gilruth, Beck & McConnell, of Chicago, Ill., and Larkin, Rathbone & Perry, of New York City (Irwin T. Gilruth, of Chicago, Ill., and A. M. Lewis, of New York City, of counsel), for appellant Central Hanover Bank & Trust Co. and another.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

Each set of these appeals presents the same principal question and is predicated upon the same portion of an order of the District Court. The portion of the order appealed from confirmed the report of a special Master which recommended to the District Court the terms of a provision which was designed to complete an earnings and expense formula to be used to de-

termine the separate earnings and expenses of the various mortgage divisions of the Rock Island system, during the period of the pendency of this proceeding under Section 77 of the Bankruptcy Act, 11 U.S.C.A. § 205. The portion of the order appealed from relates only to the method of computation of all inter-division charges and credits in respect to equipment and other property owned by one division and used in connection with the operations of one or more other divisions.

The portion of the order objected to by appellants provided that the measure of the inter-division charges and credits should be a rate of return on value of investment equal to the rate of the earnings of the using division, with a maximum of 4% and a minimum of $1\frac{1}{2}$%. Appellants contend that a proper measure should be based upon a fixed rate of return on value of investment; and urge that such measure is consistent with established railroad practices and is necessary in order to preserve to the respective mortgagees their rights in their property and the income thereof.

Identical trustees have been appointed for the debtor and its subsidiaries and these trustees have operated continuously the properties comprising the several estates of the debtor and its subsidiaries as a single railroad system. Leases under which the debtor was operating the properties of certain of its subsidiaries as yet have not been affirmed, nor disaffirmed, and the time within which the trustees of the debtor may elect to affirm or disaffirm such leases has not yet expired.

Prior to the entry of the order of the court approving the report of the Master there had been in use a formula designated as the "second revised formula." This formula contained, among other provisions, one for crediting mortgage divisions owning equipment or facilities used by other divisions with a 5% per annum return on the investment in the equipment or facilities used by the using divisions, certain offsetting charges being provided for.

Later an "earnings formula" was approved conditionally and the trustees were directed to apply the formula to the system operations for each six months period during the two years beginning January 1, 1936, and ending December 31, 1937. But the foregoing earnings formula did not contain a provision for crediting owning mortgage divisions with a return on their investment in equipment and facilities used by other mortgage divisions. The failure to include such a provision was due to the inability of the parties supporting the earnings formula to agree upon its terms. The District Court anticipated the necessity of some action in respect to the omitted provision and specified in the order approving the earnings formula that any parties "desiring to have the formula include any inter-mortgage divisions accounting for equipment or properties under one mortgage and used in connection with one or more mortgage divisions" should have the privilege of filing suggested additional provisions at any time and to move for an order modifying the formula in accordance therewith. On July 23, 1937, the appellants submitted a provision which gave a fixed credit to the owning mortgage divisions of 4% per annum of the value of the rolling stock and facilities, and which made a fixed charge of 4% per annum to the using mortgage divisions, the charge to be apportioned among the users on the basis of the extent of their user, with offsetting allowances for any use by the owning mortgage division.

Objections to the inclusion in the earnings formula of the suggested provision were filed by several bondholder's committees and mortgage trustees. The matter was referred to the special Master and a hearing was held and testimony taken. Evidence was offered by the appellants for the purpose of showing that under a general practice and custom railroads which owned equipment and facilities used by other railroads received a return on investment on such equipment of 6%, and a return on investment on such facilities of from 4% to 6%, in addition to being compensated for expenses of maintenance and taxes and, in the case of equipment, depreciation. Evidence also was offered to show that this practice and custom had been given effect in the Rock Island's own intra-system accounting and to show that the earnings formulae prepared and used in connection with pending reorganization and receivership proceedings of other railroad systems contained certain provisions similar to the proposed provision.

The significance of "mortgage division" results from the fact that the Rock Island system, although treated substantially as a unit for purposes of management and operation, includes lines owned by the Chicago, Rock Island and Pacific Railroad Company, the principal debtor, subject to different mortgages, and also separate lines

which are owned by separate corporations and leased to the principal debtor and are in turn subject to mortgages of such separate corporations. In order to preserve the rights of the several mortgagees in the mortgaged properties and the income thereof some sort of an earnings and expense formula is necessary to establish the separate earnings and expenses of the different properties which are subject to a mortgage lien. Also such a formula is necessary because Section 77 subs. c and e of the Bankruptcy Act give special emphasis to earning power as a criterion of value for the purpose of determining allotments of new securities to creditors under a plan of reorganization.

■ Unquestionably appellants are correct in their contention that there is an established railroad practice and custom for railroads to make a charge for the use of their facilities by other railroads amounting to approximately 6% on the investment represented by the equipment, and 4 to 6% in case of facilities. The Master, in his report, questions only "whether there is really any established railroad practice under present conditions." The objectors insist that such a custom grew up when the owners and users of equipment and facilities were independent and solvent roads. It would seem, however, that the basic justification for such a practice rests upon the sound economic consideration that the owner of equipment and facilities which are used by another is entitled to a return on the investment, the amount of the return depending upon various factors, such as initial investment, taxes, maintenance, etc. There is no less justification for such a practice if the· user or owner, or both, should happen to be insolvent.

■ It is easy to see that interdependence of owners and users by reason of their common membership in one transportation system might be such as to cause the usual practice to be inapplicable, and if there were no need for segregation of earnings and expenses of the different mortgage divisions in the instant case the railroad practices referred to would have no significance. Obviously, there would be no need for segregation of earnings and expenses in a system where there are no leased lines and all the mortgages of the system cover the same property and are senior or junior to one another, even if the system were involved in a bankruptcy proceeding. But different considerations are involved when different portions of the property are subject to different mortgages and the system is involved in a bankruptcy proceeding. In order to give to mortgagees the protection to which they are legally entitled it is necessary to treat the properties comprised in the various separate mortgage divisions as separately owned for the purpose of determining earnings and expenses while the system is being operated in bankruptcy.

■ The recognized railroad practice of allowing to the owners a fair return on the capital investment in equipment or facilities for its use by one other than the owner fixes items of earnings and expenses for the respective parties. The amount paid by the user clearly constitutes an item of expense and the amount received by the owner constitutes an item of earnings. The method approved by the order of the District Court, however, does not provide a means of determining proper charges and credits as items of earnings, or expenses, but provides that the rate of earnings of the user determines the amount of the charge or credit. Clearly the method represents a reversal of the normal method of determining such charges and credits. No evidence was before the Master, and we are unaware of facts of which we can take judicial notice, which would justify a conclusion that the method recommended by the Master constitutes a fair and sound method of determining charges and credits as elements of expenses and earnings of the various divisions. Obviously, it does not reflect the value of the use of equipment and facilities from the standpoint of the owner; and it would not seem to reflect substantially the value to the user unless all the earnings of the user could be attributed to the use of the equipment and facilities of another.

We are of the opinion that that part of the order appealed from and which approved the rate of earnings as the rate of return for the use of facilities and equipment was not supported by any evidence in the record.

■ The order fixes a minimum return of 1½% and a maximum return of 4%, consequently it is only within this bracket that the earnings in fact would supply a basis for a rate of return. But charges and credits which are determined by a rate of return which is fixed by the rates of earnings of different divisions obviously must

vary for different divisions in the system; some user divisions will be charged on the basis of a higher or lower rate of return than others and an owning division will be credited on the basis of different rates of return for the same services. It would seem to be inequitable, as between mortgagees of the property of owner divisions, to adopt a measure for charges and credits which would discriminate between the division owners of equipment and· facilities. We agree with the following expression of the Interstate Commerce Commission: "Accepting the premise that it is proper to allow to an owning line credit for the use of its property by other lines, although parts of the same system, we believe that the basis for the computation of such credits should be one which could be uniformly applied."[1]

We are not prepared to say that the measure of charges between the using and owning divisions should be the rate of return urged by appellants. But we do believe that the measure should be a fixed and uniform rate of return on the investment in the facilities and equipment; and in view of the established railroad practice for a using line to pay to the owning line a charge of from 4 to 6% of the value of the equipment and facilities furnished by the owning line, appellants' proposed fixed charge of 4% cannot be rejected arbitrarily.

 It follows from what we have said that we cannot adopt the suggestion of appellants to order their proposed measure substituted for that recommended by the Master. Nor can we accept the suggestion that we direct a reference of the matter to the Interstate Commerce Commission pursuant to Sub. (c) par. (10) of Section 77 of the Bankruptcy Act. The foregoing provision leaves the matter of reference to the sound discretion of the District Court. We strongly favor the policy of reference by the District Court in order to have the advantage of the expert knowledge and experience of the Interstate Commerce Commission in railroad accounting and practice. The obvious purpose of Congress as indicated by Section 77, sub. c(10) is to make available to District Courts the recommendations of the Commerce Commission, and we are of the opinion that such recommendations, based as they necessarily must be upon expert knowledge and experience, will prove to be invaluable. Consequently, although we cannot direct the District Court to refer the matter to the Interstate Commerce Commission, we recommend such procedure.

Separate briefs have been filed in appeals Nos. 6803, 6870, 6871, but the principal question in these appeals is the same as that presented in appeals Nos. 6802, 6868, 6869; and our discussion and holding applies with equal force to both sets of appeals.

In both sets of appeals appellants and appellees request this Court for a holding, or an expression of opinion, on questions other than the main question which we have discussed. In view of the limited scope of the hearing before the Master and of his report which was before the District Court we do not feel that we should · anticipate findings or holdings which necessarily will involve factors which, at the most, were incidentally involved, or referred to, in the hearing before the Master. We find nothing in the action of the District Court which precludes a consideration of these other questions, and nothing in our opinion and decision is intended to foreclose their further consideration and determination.

The portion of the order of the District Court appealed from is reversed and the cause remanded to the District Court for further proceedings not inconsistent with this opinion.

---

[1] New York, New Haven & Hartford Railroad Company Reorganization, 1938, 224 I.C.C. 723, 731.