## In re CHICAGO, R. I. & P. RY. CO.
### No. 9395.

Circuit Court of Appeals, Seventh Circuit.
June 20, 1947.

■■■■■■■■

Edward W. Bourne, Wilkie Bushby, Edward K. Hanlon, Alexander M. Lewis, Sanford H. E. Freund, and Jesse E. Waid, all of New York City, for petitioners.

Robert W. Purcell, of Cleveland, Ohio, Thomas Dodd Healy, of Chicago, Ill., Harry Kirshbaum, of New York City, and A. Bradley Eben, of Chicago, Ill., for respondents.

EVAN A. EVANS, Senior Circuit Judge.

The petition upon which I am asked to act is presented by numerous trustees named in several bond issues of the Chicago, Rock Island and Pacific Railway Company.[1] It is predicated upon Section 18 of the Judicial Code, 28 U.S.C.A. § 22, and is addressed to me as the senior circuit judge of this Circuit.

Petitioners assert they represent large groups of creditors who have, on various occasions, been thwarted in their efforts to secure the reorganization of the Railroad under Section 77, the Railroad Reorganization Act, 11 U.S.C.A. § 205, by the rulings of the District Judge. They assert that they cannot expect judicial action by the District Judge, which will expeditiously carry out the plan of reorganization, which has been approved by the Interstate Commerce Commission, the United States District Court, and the Circuit Court of Appeals. Its execution has been recently directed by the last-named court.[2]

The undersigned, as senior circuit judge, is requested by this petition to designate a circuit judge of this Circuit, to sit in the district court and hear the petitioners, who are seeking the completion of the reorganization of this debtor Railroad. The plan of reorganization awaits only its execution, it having been not only approved by the Interstate Commerce Commission and the Courts, but has been ratified by the creditors whose combined claims aggregate approximately four hundred million dollars, held by approximately seventeen thousand creditors.

Reference is made to the numerous decisions of the courts which have passed upon various phases of this case, for its legal history.[3] The proceedings were begun in June, 1933. It first reached the United States Supreme Court in 1934.

Analyzed somewhat broadly, the petition presents both legal and factual issues.

Two legal questions arise:

(1) Does Section 18 of the Judicial Code invest the senior circuit judge with authority to designate a circuit judge to sit in a *pending* district court suit and thereby displace a sitting district judge, upon said senior circuit judge's determination that "public interest" requires such action?

(2) If the authority to act is conveyed

---

[1] Alexander & Green, Mr. Edward Bourne of counsel, for the Protective Committee of the General Mortgage Bonds due January 1, 1988.

White & Case, Jesse Waid of counsel, for Bankers Trust Company and R. G. Page, as Trustees of the General Gold Bond Mortgage, dated January 1, 1898.

Root, Ballantine, Harlan, Bushby & Palmer, Wilkie Bushby of Counsel, for the Metropolitan Life Insurance Company, as remaining member of the First and Refunding Group.

Rathbone, Perry, Kelley & Drye, Alexander Lewis of counsel, for the Central Hanover Bank and Trust Company, surviving Trustee for First and Refunding Mortgage 4% Bonds.

Shearman & Sterling & Wright, Sanford Freund of counsel, for the National City Bank of New York, Trustee for Secured 4½% Bonds, Series A.

Beekman & Bogue, Edward Hanlon of counsel, for Protective Committee for Holders of First Mortgage 4½% of Rock Island, Arkansas and Louisiana Rd. Co.

Cahill, Gordon, Zachry & Reindel, Daniel James of counsel for Protective Committee for Choctaw, Oklahoma and Gulf Railroad Co. Consolidated Mortgage 5% Gold Bonds, and Choctaw and Memphis Railroad Company First Mortgage 5% Gold bonds.

[2] No. 9387, In re Chicago, Rock Island & Pacific R. Co., 7 Cir., 1947, 162 F.2d 257.

[3] In re Chicago, Rock Island, Pacific R. Co., 7 Cir., 72 F.2d 443; Cheston v. Chase Nat. Bank, 7 Cir., 160 F.2d 942; Chicago R. I. & P. R. Co., 7 Cir., 90 F.2d 795; Id., 7 Cir., 108 F.2d 410; Id., 7 Cir., 110 F.2d 395; Id., 7 Cir., 149 F.2d 529, rev'd, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595; Id., 7 Cir., 155 F.2d 889, rev'd, Fleming v. Traphagen, 329 U.S. ——, 67 S.Ct. 365.

by said Section 18, is it discretionary with the senior circuit judge whether he should act?

The two factual issues are:

(1) Does the instant petition allege, and do the supporting facts disclose, such delay as to amount to judicial misconduct on the part of the district court as to require the senior circuit judge, under Section 18, to find that "public interest" requires the entry of the order sought?

(2) Do the allegations and proof show that Mr. Colnon, a trustee appointed by the district court, has been so recalcitrant as to wilfully and actively block the prompt and effective execution of the plan of reorganization?

The statute upon which petitioners rely and about which the present legal controversy rages, reads:

"Circuit judge designated to hold district court; powers. (a) The Chief Justice of the United States (or in the absence of the Chief Justice, the senior associate justice), or the circuit justice of any judicial circuit, or the senior circuit judge thereof, *may if the public interest requires,* designate and assign any circuit judge, including retired circuit judges * * * designated and assigned to temporary duty in the judicial circuit, to hold a district court within such circuit * * *." (As amended December 29, 1942, 56 Stat. 1095.)

The petition alleges that the reorganization has proceeded to the point where the four reorganization managers have been nominated pursuant to Article XIV, of the approved Plan of Reorganization. The Plan provides for ratification of the nominees by the District Court, and for his appointment of a fifth. These reorganization managers name the first Board of Directors, and carry the burden of seeing that the Plan is fully and expeditiously executed.

The material allegations of the petition are: (1) Deliberate delay on the part of the trial judge and of one trustee, in the effectuation of the plan; (2) usurpation by the trial judge of the power to appoint reorganization managers; (3) Obstructionist tactics, and efforts, on the part of said trustee, and judge, to gain for the Railroad's stockholders and unsecured creditors whose claims have been wiped out by the plan, a foothold in the financial structure of the Railroad; (4) alleged action of the Trustee Colnon in calling a meeting of stockbrokers in New York to persuade them to organize to oppose the nominations which would be made pursuant to Article XIV of the Plan and to suggest reorganization managers themselves, and action by trustee Colnon in his appearance before a Congressional Committee hearing of the so-called Reed bill, and alleged misstatements made by said Trustee before said Congressional Committee, the general object of said efforts being to defeat the execution of the Plan; (5) conflict between the co-trustees; (6) the need for the removal of Trustee Colnon, allegedly disqualified, which motion for removal should be heard by a judge other than the sitting judge, who appointed him.

In a general way, it may be said that a sharp controversy has arisen over the action of the District Court and particularly over trustee Colnon, appointed by the Court, to allegedly frustrate and defeat the Plan of Reorganization, rather than to see to its execution, at the earliest possible date.

Back of this conduct is or has been a conflict long continued, between the old stockholders of the Railroad, who are eliminated by the Plan of Reorganization, and some unsecured creditors who do not receive as much as they believe they are entitled to receive under the Plan of Reorganization,—and the creditors who hold bonds secured by prior lien who have long waited for the return of the Railroad to its owners.

The story of this long stay of the Railroad with the courts is not complimentary to the courts. Fourteen years, is, in the writer's opinion, too long for any receivership or bankruptcy proceedings. When this case was first presented in the Circuit Court of Appeals in 1934, 72 F.2d 443, 452, I had the duty of writing the opinion for the Court. We there said:

"If plans are not forthcoming with reasonable promptness, relief will be granted appellants. This bankruptcy proceeding

contemplates a plan of reorganization. *This must be undertaken expeditiously and proceeded with diligently. Such proceedings must never be viewed as nursing receiverships.* The two sections, 74 and 77 (11 U.S.C.A. §§ 202, 205), are not to be used to delay, but to facilitate reorganizations of properties that are overcapitalized or whose capital structure is unfortunate. There is no basis for appellants to assume the court will not insist on the consummation of these ends."

Upon that decision's being affirmed by the Supreme Court (Continental Illinois Nat. Bank & Trust Co. of Chicago v. Chicago, R. I. & P. Ry. Co., 294 U.S. 648, 685, 55 S. Ct. 595, 610, 79 L.Ed. 1110), Justice Sutherland, speaking for the Court, said:

"It is true that no plan has yet been consummated; and, so far as the record shows, none has been prepared or is in the course of preparation. If this long delay were without adequate excuse, the retention of the injunction for the long period which has intervened since it was granted could not be justified. But the delay is obviously due to the many doubts and uncertainties arising from the present litigation. Until they are finally resolved, the consummation, or even the preparation, of any definite plan is plainly impracticable. With those doubts and uncertainties now removed, the proceeding should go forward to completion without further delay, or be dismissed.

"The delay and expense incident to railroad receiverships and foreclosure sales constituted, probably, the chief reasons which induced the passage of section 77; and to permit the perpetuation of either of these evils under this new legislation would be subversive of the spirit in which it was conceived and adopted. Not only are those who institute the proceeding and those who carry it forward bound to exercise the highest degree of diligence, but it is the duty of the court and of the Interstate Commerce Commission to see that they do. Proceedings of this character, involving public and private interests of such magnitude, should, so far as practicable, be given the right of way both by the court and by the commission, to the end that they may be speedily determined."

These words were spoken over twelve years ago. It is unnecessary for me to do little more than repeat and add that it is hardly possible to find the court's operation of a railroad through a receiver or a trustee to be as effective or as satisfactory as is the operation of the owner's. Moreover, the right of the owners to manage the affairs of the Company should not be abridged save where disputes, inability to meet obligations or other controversies, make the operation by the owners impossible. And courts should not withhold the property longer than necessary, and the shorter that period, generally speaking, bespeaks effective and efficient handling by the courts. And what I here say applies not only to railroads that are being reorganized under Section 77 of the Reorganization Act, but applies to other debtors that are being reorganized—and also to nursing receiverships, the long-continued run of which has reflected on the courts having jurisdiction of them.

This petition has been strenuously opposed by several parties.[4] I have appointed Attorney Thomas Dodd Healy to appear amicus curiae, and he has argued in opposition to the petition. His appointment was by me made as he is familiar with the issues, and argued the mandamus case for Judge Igoe in the Circuit Court of Appeals, recently. He has filed a brief with me wherein he gives his reasons for construing Section 18, above-quoted, as not giving the senior circuit judge the authority necessary to act in a case such as this.

He and other opponents of the petition argue: (1) I have no authority under Section 18 to act on the facts alleged to exist in the instant case—that section 18 was intended simply to authorize circuit judges to sit in the district court to remedy crowded dockets due to lack of district judges,

---

4 Co-trustee Colnon; Atty. Harry Kirshbaum, for Convertible Bondholders Group; Mr. Robert Purcell, who represented the Alleghany Corporation, a large holder of bonds; John Gerdes and Henry F. Tenney, Counsel for The Chicago, Rock Island & Pac. Ry. Co., Debtor; Gann, Secord, Stead & McIntosh, Attys. for Protective Committee of Rock Island, 7% & 6% preferred stock.

because of illness, etc; (2) there has been no undue delay in administration of the Railroad's reorganization proceedings; (3) the District Judge's administration, and that of the accused trustee, have been constructive, rather than obstructive.

In addition to the opposition of the stockholders and the unsecured creditors and the Alleghany Corporation, a creditor, there has been filed with me a written memorandum signed by all the District Judges of the Northern District of Illinois, Eastern Division, other than Judge Igoe, including retired Judge Holly.

This memorandum reveals that Judge Igoe, whose action is here attacked, entered an order, June 5, 1947, which contained the following

"Because a petition under the provisions of Paragraph 22, Title 28 U.S.C.A. has been filed with the senior Circuit Court Judge of the Seventh Judicial Circuit, which in substance alleges prejudice and seeks a change of venue and

"Because I am unwilling to remain in any case where prejudice is alleged,

"Therefore, the above entitled cause is transferred to the Executive Committee for reassignment under the rules."

Such action by Judge Igoe confirms the favorable impression which the writer has always held of him.

The said District Judges, other than Judge Igoe, also called my attention to the existence of a general order which governs the handling of the business of said Court in said District, the substance of which provides for the assignment of cases that are filed in that court, and the making up of Calendars. It also provides for the creation of an Executive Committee which has control of assignments. The Rule seems to be well designed to take care of the cases which fall under one of three groups, to-wit, bankruptcy, criminal actions, and civil actions.

Section 3 provides that

"A judge may transfer any case on his calendar to the Executive Committee, and the Executive Committee may if it believes good cause exists for the transfer re-assign the case to any other judge. If the Executive Committee is of the opinion that good cause does not exist for the transfer it shall send the case back to the judge who transferred it. * * *"

It was under this section 3 that the Judges acted after the instant petition had been filed with me. Judge Igoe asked to be relieved of the case, and, pursuant to said Section 3, the Executive Committee reassigned the case to Judge Igoe.

The said memorandum also contained what might be called a brief or statement of the reasons for its filing. In said memorandum the said District Judges stated

"If the petition, referred to in Judge Igoe's memorandum, had not been entertained by the Senior Circuit Judge of this Circuit and had he not ruled Judge Igoe to answer, we would not have thought that Section 22, Title 28 U.S.C.A. authorized the procedure for a change of venue, which some one or more of the parties in this matter are following. * * *"

In this respect, the District Judges were misinformed because the senior circuit judge had not ruled on Judge Igoe to answer. There had been no action, and has been no action, taken by me, either tending to acknowledge jurisdiction by virtue of Section 18 or to refuse such jurisdiction. It is elementary that I must consider *all* petitions presented to me, and then determine my power to act in respect to the same.

In passing it might be added that the senior circuit judge made no rule on Judge Igoe and did not require him to appear or to answer.

The said District Judges further state as reasons for their decision as follows

"Unfortunately, if the judges of this court, other than Judge Igoe, should permit this transfer to take place some other member of this court would then be placed in exactly the same position that Judge Igoe is now placed. He would be subjected to exactly the same sort of pressure that Judge Igoe is being subjected to if he, the other member of this court, did not fall in with the views of the moving party in said proceeding.

"The statutes provide a remedy by petition for change of venue when any party may feel that the judge before whom the

case is pending is prejudiced against him, and give a sufficient remedy in such a situation. We cannot feel that a party ignoring those provisions of the statute may, whenever he is dissatisfied with the rulings of a court, appeal to a judge of any other court to remove the case."

I must confess to a reaction somewhat different from that which the District Judges express. While not in anyway assuming that the facts in this case warrant action, it would seem to me that no District Judge should worry about any action that might be taken if one of them be put in the same position as Judge Igoe.

Their position, it seems to me, should be the same as mine.

I merely am concerned with two questions: Does the statute impose a duty on the senior circuit judge? If so, does the District Judge's conduct merit disapproval and the substitution of a circuit judge to sit in his place?

Because a district judge may be adversely affected by an adverse ruling, if his conduct warrants it, presents no basis for a rally to his support. Excuse for misconduct may not be found in the fact that the wrongdoer is a judge.

Happily, I can say this is the first time in the thirty-one years that I have been on the bench that such a petition has been filed.

I will, as I should, give consideration to the views of the learned District Judges, even though they acted upon the false assumption that the senior circuit judge had ruled on Judge Igoe to answer. The said judges are naturally and rightfully concerned about the forced removal of one of their members from an important case. It is hardly necessary to add, however, that they as well as the senior circuit judge, are under the same solemn duty of applying and enforcing the law as it exists.

The statute was enacted nearly forty years ago. Its object was to promote justice and expedite the disposition of cases. If the facts call for its invocation, I have the clear duty to apply it.

With this rather extended preliminary statement, I approach the consideration and construction of the statute.

The doubt-creating words are "may, if the public interest requires." What significance should I give to the word, "may"? Does it relieve the senior circuit judge of responsibility if the contemplated action be unpleasant? Is he given a discretion? I think not.

The statute gives to the senior circuit judge the authority to act upon satisfactory proof of the existence of certain facts. The *power to act* imposes upon the judge the *duty to act* if the facts exist. If jurisdiction is granted to a court or if power is conveyed to a judge by Congressional enactment, it is the duty of the court or the judge to act when and if a petition presents a case for the exercise of jurisdiction or the power of the judge.

I therefore must confine myself to the study of the words "if the public interest requires."

The writer must confess to a strong feeling that Congress never intended to convey to the senior circuit judge the authority to remove one judge and name another to hear and dispose of a case pending in another court. It seems to me that Congress in enacting said Section 18, was merely completing a plan of expediting judicial work and making the greatest possible use of all of the Federal judges, district and circuit.

In order to accomplish this result of expediting the courts' work, Congress first gave authority to a district judge to sit outside his district, but in the same circuit, 28 U.S.C.A. § 17. It then gave authority to transfer the district judge from one district in one circuit to a district in the same circuit, 28 U.S.C.A. § 21. It also gave authority to transfer the district judge from one district in one circuit to a district in another circuit, 28 U.S.C.A. § 17. It also gave authority for a district judge to sit in the circuit court of appeals, 28 U.S.C.A. § 216. It then gave authority for a circuit judge to sit in the district court. All of these grants of authority (and of duty) necessitated a practical implementation. This was accomplished by the provision that the senior circuit judge should make the assignments and stated the factual situation upon which he should act. In none of

these cases was it contemplated, or was the authority conveyed to the senior circuit judge, to assign a judge to sit in a cause wherein another judge was sitting.

In other words, in all cases, so it seems to me, it was to make possible the use of judges so assigned either because they were not busy, or because the district to which they were assigned was over-crowded with work due to some cause such as heavy calendars, sickness of judges, vacancy due to death, etc.

The district judge could be called to sit in the circuit court of appeals and it was logical that the circuit judge should sit in the district court upon a showing of need therefor, and the circuit judge's acceptance of the assignment, without interference with his duties on his court.

As a result of this policy and as a completion of the plan of greater efficiency in our Federal judicial system, the section in question was enacted.

A study of its purpose appears in the Committee's Report

"Certain provisions contained in the bill make the plan recommended in this revision as fully elastic as the present system and avoids the necessity for the creation of any new judges. It is provided that if in any district the work devolving upon the district court is too heavy to permit its prompt transaction by the district court judge a circuit judge, not fully occupied, may be designated to perform the work as a district judge under exactly the same principles and regulations as district court judges now perform the work of circuit court judges.

"This section, in a strict sense, is new legislation. Its purpose as explained in the general report (of the committee on revision which was submitted March 15, 1910,) is to permit circuit judges to try cases in the district courts, in order to prevent congestion of business in those courts, and to afford business for circuit judges in circuits in which there is not sufficient business in the Circuit Court of Appeals to occupy the time of the judges."

See Vol. 127, House Documents, 61st Congress, 2nd Session, 1909-1910, Document #783, Part 1: Revision and Codification of the Laws, etc., March 15, 1910; 4 Fed.Stats.Ann. (2nd Ed.) p. 829; 28 U.S. C.A. § 22.

Nothing here may be found which specifically provides that circuit judges may be assigned to sit in the district court and *replace a judge who is engaged in the trial or disposition of a pending case.*

I think the conclusion inescapable, that it is a statute to expedite judicial work rather than one which authorizes the substitution of one judge for another. If a new plan of court organization, never heard of, I venture to say, in either state or federal court proceedings, whereby one judge may remove a judge and name another, were to be adopted by Congress, that body should have definitely and specifically so provided.

It is fair to assume that in reporting the bill, the Committee reporting did not cover all cases where assignments may be made. However, the instances named are not reconcilable with that of a case of substitution of a circuit judge for a sitting district judge.

Happily, though unfortunately for the clarity of construction of the statute, or for legal guidance, few legal precedents have arisen which involve the meaning of the words "if the public interest requires."

Such precedents as have been cited or found by my own research have been studied.

There are some judicial precedents which seem to uphold the construction which petitioners place upon this statute, while another opposes it.

In the case of The M. L. Sylvia, D.C., 34 F.Supp. 404, Justice Frankfurter, in the First Circuit, acted upon a petition drawn pursuant to this statute. He denied the application but apparently assumed that he had authority to make the appointment. It seems to me the case, while in point, is not to be taken too seriously because Justice Frankfurter was so clearly convinced that the facts did not warrant action that he did not pause to inquire into or to pass upon his authority to act.

There is also cited to me a case which arose in the Tenth Circuit where Judge Lewis substituted a judge to sit in place of Judge Hopkins of Kansas. It is difficult to get all the facts in the case. I think we must count the holding as one in favor of petitioners.

Another case is that of Johnson v. Manhattan R. Co., 289 U.S. 479, 53 S.Ct. 721, 77 L.Ed. 1331. That case can be distinguished because it did not involve the substitution of a circuit judge for a sitting district judge, but rather the power of a senior circuit judge to assign himself to sit in the district court, he having determined that public interest required him to do so. He did not name himself to sit in a case which was then pending and was being tried by a district judge. His dispute arose out of the existence of a District Court rule which limited his authority after he had been legally assigned by himself to sit in the district court. There is dicta in the opinion and counsel rely upon it. I shall merely state that there are vitally different facts which clearly distinguish this case.

In an article in 46 Harvard Law Review, p. 503-4, the writer was reviewing the Manhattan Railway case, supra, and made the following observation of said Section "The failure of these proposals (to make circuit judges ex officio members of the district court) indicates that Section 18 was not intended to make a broad grant of power."

Then there is the case of In re Wingert, D.C., 22 F.Supp. 483. There Judge Parker gave reasons for a construction which would deny the authority for which petitioners contend.

The present case is full of factual elements which, it seems to me, support the conclusion which I have reached, that the senior circuit judge is not authorized to name a circuit judge to sit in the district court and displace a sitting judge in charge of the case.[5]

If an order of substitution were made, I would have to name a circuit judge to sit.

I would assume that he would sit with the purpose of expediting and hastening completion of the Plan. It is quite inconceivable that he should not be free to act as he believed the facts and the law required him to act. He would not accept, if acceptance meant, with instructions or with orders. Whether he would remove the trustee and appoint a new one would be discretionary. He would not be directed to do so.

I am convinced that the District Judge can do nothing erroneous which may not be overcome through an appeal. Such an appeal could raise the propriety of the trustee's retention or removal. On such appeal the court could review the district court's action in refusing arbitrarily to ratify well-qualified men named by the parties authorized to nominate them under the approved Plan of Reorganization.

True, appeals taken from orders involving discretionary action by the lower court are not as satisfactory or as successful as they would be if no discretion of the trial judge were involved. But I think they would be quite as satisfactory, if not more so, than the exercise of authority by the senior circuit judge replacing a sitting judge with a circuit judge. Such a course is fraught with dangerous possibilities. But my duty is to construe and carry out the Congressional enactment not to speculate on its wisdom.

There is another remedy also open to the petitioners, namely, the filing of an affidavit of prejudice. This may not be as clear a remedy as expressed by the district judges and by the counsel who argued orally in its favor, yet it should not be overlooked. And, finally, there is the possibility of an impeachment of a recalcitrant judge who deliberately fails to perform his duty.

*I am not in any way suggesting that the facts in the present case warrant any of these actions—not at all—but I suggest them only to throw light upon the correct construction of the phrase in the statute here invoked.*

Moreover, if I should take up the factual

[5] See also Penn. Steel Co. v. N. Y. City R. Co., D.C., 221 F. 440; United States ex rel. Fehsenfeld v. Gill, 4 Cir., 292 F. 136; Benitez v. Bank of Nova Scotia, 1 Cir., 141 F.2d 939; 46 Congressional Record, Part 1, p. 302-4; Part 3, p. 2138-9; Part 4, p. 4006-7.

614

issues and consider the action of the court or of the trustee, and weigh the charges made by petitioners, I am confronted by the confirmed judgment of the District Judges that there has been no unreasonable delay and no mistake made by the Judge in not removing the trustee. I am also informed by creditors of considerable size and importance that they are opposed to the removal of the trustee and highly favor the action taken by the Judge.

True it is, I received the impression that these creditors and stockholders are not seeking to carry out the plan of reorganization, but they applaud the trustee because he is blocking it and doing all that he can to prevent its execution. I do not respect their action or their motives. Nor do I agree with the District Judges, though respecting their opinion, that there has been no unnecessary delay in the reorganization of this Railroad. I state emphatically that I think fourteen years is longer than it should be and longer than necessary to reorganize any debtor, be it a railroad, a street car company, or any other debtor.

I can not, however, believe the foregoing observation in reference to blocking the Plan, applies to Judge Igoe. He has not had charge of these proceedings for the entire period. He likewise has been confronted by a war during the period of his administration and if there be any justifiable exception to the length of time it should take to complete a reorganization, it is owing to the unpredictable upheavals due to war.

I feel certain that now that the Circuit Court of Appeals has spoken in reference to the modification of the Plan so far as it affects the nomination of reorganization managers, the District Judge will willingly and promptly follow the directions of the appellate court. In fact, I feel sure of it. There has not been anything that I know of which would justify the belief that he would not do so.

I am not so sure about trustee Colnon who has said and done things which would possibly justify a different conclusion. In fact, they would justify a conclusion, that he has been bent upon delaying the execution of the plan and changing it in the interest of the junior creditors or the unsecured creditors and stockholders and to prolong the period of reorganization. In support of this opinion, I do not rely upon statements of petitioners but rather upon statements of Mr. Colnon which appear in the record and which he made in the District Court when the matter was there heard. They indicate he has misconceived his duties and entertains magnified ideas about the part he is to play in this reorganization.

Not too subtly or too modestly, trustee Colnon spoke in the District Court when this hearing was on, as follows:

"I was not the only trustee to appear down there, the New Haven trustees preceded me, and I understand that the trustees of the Central of Georgia are coming on in the Senate, but whether I was the only one or not, I conceived it to be my duty first and foremost as a trustee to look after the interest of the unsecured creditors in this bankruptcy. The secured creditors are able to take care of themselves.

"If I go down and ask first for the interest of these little fellows, even though it may be stepping on the toes of the senior creditors, I am ready to stand for that."

▉ Mr. Colnon's duty as trustee was to represent all creditors, not one group. There should be, for the trustee, no two sides to this controversy. This was especially so after the plan of reorganization had received the approval of the Interstate Commerce Commission, the United States District Court that appointed him, and the Circuit Court of Appeals. His duty was clear. It was to proceed diligently with the effective execution of the plan as adopted.

Delay or efforts to defeat the plan might have an effect on the price of the securities on the stock exchange but that is another reason for the early execution of the plan. I fail to see or understand Colnon's motive in going to New York and arranging a meeting of the stock brokers in an effort

to stir up opposition to a plan which was a closed matter so far as he was concerned.

In closing this lengthy opinion, may I not suggest that all parties involved in this unpleasant controversy, highly resolve to forget the differences of the past and proceed, each with due respect to the rights and duties of the other, and earnestly endeavor to bring this prolonged involved reorganization to an *early termination*. Unfortunately, its closing may not be agreeable to all because the old stockholders are wiped out and unsecured creditors have had their claims reduced in part. But the Plan has long been before the Interstate Commerce Commission and the courts and all parties have had an opportunity to be heard. There must be an end to litigation. Courts may sympathize with the stockholders whose interests have been eliminated. But this result was because the property of the debtor did not have a value equal to the claims of the creditors. This fact being judicially determined, nothing creditable or worthy appears in the action which the losing parties are making for delay to hurt those who too have suffered losses and whose claims may yet be over a road with many a heavy grade.

I earnestly urge all the parties to keep their eyes on the future and not get lost—looking backward. I trust the petitioners will re-present their nominations and other proposals to Judge Igoe in this spirit. And I am offering a valueless but good faith guarantee that their proposals will be received in the same spirit, and in the sincere desire to get this reorganization creditably and quickly completed.

It may be supererogatory of me to state that the denial of this petition is, of necessity, without prejudice to application for the sought-for relief to those my senior in power "The Chief Justice of the United States (or in the absence of the Chief Justice, the senior associate justice), or the circuit justice". Section 18 vests such power as there authorized, in those named persons,—I, the senior circuit judge, being the last on the list of those empowered to act.

The petition is denied.