210 P.2d 626

**STATE ex rel. SEDILLO v. ANDERSON et al.**

No. 5232.

Supreme Court of New Mexico.

Oct. 17, 1949.

A. L. Zinn, Santa Fe, Carl P. Dunifon, Silver City, J. R. Wrinkle, Silver City, for relator.

Edwin Mechem, Las Cruces, R. C. Garland, Las Cruces, W. C. Whatley, Las Cruces, for respondents.

## PER CURIAM.

The question for decision is whether the recitation by the Chief Justice in an order designating a justice of this Court to hold court in a given county in the state of the existence of the jurisdictional facts upon which his power so to act depends, namely, that the public business requires and that no district judge is available for the designation within a reasonable time, may be challenged by an accused in an effort to invalidate judicial acts performed by the justice under the designation.

Ancillary to a decision of this main question, the further question arises whether the order of designation mentioned, as well as an additional order designating respondent to preside at the trial of relator on two indictments returned into open court before the justice mentioned acting under such designation, both are void because signed by the Chief Justice at his Chambers in Roswell, New Mexico, rather than at the seat of the Court at the State capital in Santa Fe.

The legal questions stated arise out of litigation pending in Dona Ana County, New Mexico. On the 29th day of July, 1949, two indictments were returned into open court there against relator. They were received by the Honorable James B. McGhee, a Justice of the Supreme Court acting under a designation of the Honorable Charles R. Brice as Chief Justice to hold court in said county, signed at Roswell, New Mexico. Thereafter and under date of August 11, 1949, another order was signed by the Chief Justice in his chambers at Roswell, New Mexico, designating the Honorable C. Roy Anderson, Judge of the Fifth Judicial District, who is respondent herein, to preside at the trial of the indictments so returned against the relator. When the trial of these indictments was about to come on for hearing before respondent, the relator applied to this Court for writ of prohibition to restrain him from further proceeding in the cases upon the ground that the order designating the justice of this Court, who presided when the indictments were returned into open court, was wholly void.

Relator rests his claim of invalidity of the order on the contention (a) that at the time the justice was designated, the Honorable W. T. Scoggin, Jr., Judge of the Third Judicial District, who was duly elected, qualified and acting judge of said district, had made no request on the Chief Justice for a designation and was at all times present, able and willing to preside and attend to judicial matters within his district; and (b) that the order designating the justice to hold court in said district was signed at the chambers of the Chief Justice at Roswell, New Mexico, rather than at the seat of the Court in Santa Fe. We authorized the issuance of an order calling upon respondent to show

cause before this Court why a permanent writ of prohibition should not be issued against him as prayed for. The matter is now before us for final hearing following oral argument and the filing of briefs by counsel for the respective parties. The facts stated arise on allegations contained in relator's petition, admitted for purposes of a decision of respondent's motion to dismiss, filed to the petition.

The pertinent language presented for construction is to be found in section 15 of Article 6 of the state constitution, the portion italicized having been added by amendment through its adoption at the general election held on November 8, 1938, to-wit:

"§ 15. Any district judge may hold district court in any county at the request of the judge of such district.

"Whenever the public business may require, the chief justice of the Supreme Court shall designate any district judge of the state, *or any justice of the Supreme Court when no district judge may be available within a reasonable time,* to hold court in any district, and two or more judges may sit in any district or county separately at the same time. If any judge shall be disqualified from hearing any cause in the district, the parties to such cause, or their attorneys of record, may select some member of the bar to hear and determine said cause, and act as judge pro tempore therein." (Italics added.)

It must be obvious to all from a reading of this section of article 6 of our constitution that a mandatory duty rests on the Chief Justice to designate a district judge to hold court in any district of the state "whenever the public business may require" and, permissibly, a justice of the Supreme Court, "when no district judge may be available within a reasonable time." There are significant omissions in the section. Before a district judge may hold court outside his district under this language of the constitution, otherwise than by designation of the Chief Justice, he must be requested so to do by the judge of the district in which he is to hold court. Not so as to designations by the Chief Justice. The constitution does not interpose as a condition to his power to designate, either a district judge or a justice of the Supreme Court, that he shall have been requested in such behalf by a district judge. Indeed, the provision is silent on how the Chief Justice is to be informed of the occasion for making a designation. The tenor of the language employed yields to no other conclusion than that the Chief Justice himself is to determine existence of the facts calling for a designation. In making such determination, he may rely on facts presented to him by some district judge in connection with a request to des-

ignate, although he is not confined to information from that source. The query then follows, having made such determination as recited in an order of designation, how conclusive is it? May its verity be impugned in a challenge to the jurisdiction to act of the judge or justice named in an order carrying such recitals? We think not and shall proceed to state our reasons.

The case at bar presents a case well calculated on admitted facts to test the correctness of our conclusion. The resident district judge had made no request that a judge be designated to hold court in his district. He was present in his district and on the date mentioned, July 29, 1949, according to facts admitted by the motion, "ready, able and willing to preside and attend to judicial matters in his district." If there ever were facts that would put the soundness of our conclusion to the supreme test, these are they. And, yet, they do not shake us in our belief in its soundness, for however much these facts, on their face, may argue against the existence of the power exercised by the Chief Justice, if *they* throw open to challenge the verity of his recital of jurisdictional facts, then no designation of a judge or justice to hold court in any district of the state, however routine and matter of course, is immune from such an attack. This would, indeed, create an intolerable situation. We do not think such is the meaning intended by the language

employed and there are precedents supporting our conclusion, some in our own state.

In State ex rel. Holloman v. Leib, 17 N. M. 270, 125 P. 601, 602, writing of the power of the Chief Justice under this provision of our constitution, we said:

"Again, the Chief Justice has power under this section to designate any district judge to hold court in any district whenever the public business may require. It is not only when the public business may be too heavy for one judge to attend to, but whenever, for any reason, the public business may require, that the Chief Justice has the power to designate another district judge to hold court in any district."

See, also, State v. Towndrow, 25 N.M. 203, 180 P. 282, and Massengill v. City of Clovis, 33 N.M. 318, 267 P. 70, 72. In the Massengill case, where one district judge was acting under an oral request of another who certified that in so doing he was acting at the request of the other, we said:

"The certificate of the judge of the district court that in doing certain acts in a cause he was doing so at the request of another judge will always be sufficient to carry with it the impress of absolute verity so far as this court is concerned."

Cases from other jurisdictions, at least some directly and others arguendo, support us in the conclusions reached. See Seaboard Realty Co. v. Seaboard All-Flor-

ida Ry., 91 Fla. 670, 108 So. 675; State ex rel. Smith v. Gray, 95 Fla. 412, 116 So. 475; Arizona Mutual Auto Ins. Co. v. Bisbee Auto Co., 22 Ariz. 376, 197 P. 980; Payne v. Williams, 47 Ariz. 396, 56 P.2d 186; Bearden v. Donaldson, 141 Ga. 529, 81 S.E. 441.

In Florida a statute authorizes the Governor to designate another judge to hold regular or special terms of court in any circuit at such times as he may direct, whenever it appears to him that any judge of a circuit is disqualified in any case pending in his court, or that he cannot for any cause properly hear, try and determine the same. In Seaboard Realty Co. v. Seaboard All-Florida Ry., supra, it was sought by prohibition to restrain the Hon. Elwyn Thomas, as judge of the Twenty-First judicial circuit, designated by the Governor in such behalf, from proceeding further in certain causes pending on the docket of the district court of Palm Beach County, presided over by the Hon. C. E. Chillingworth, the resident judge. The grounds of the application, as well as the holdings of the Court, sufficiently appear in the language of the opinion, which we quote as follows [91 Fla. 670, 108 So. 677]:

"The grounds of the application for writ of prohibition are as follows:

"(1) 1. That the judge of the circuit court of Palm Beach county was not in fact absent from the circuit, but was hold- ing a special term of the circuit court of said county in the courthouse in West Palm Beach, Flâ., where Judge Thomas was also holding court under the Governor's order; the courts being held in adjoining rooms at the same time.

"This allegation is not borne out by the record attached to the application, but, even if it were a correct allegation of facts, it would not affect the legality of the actions of either of said judges, under sections 3057 to 3061, inclusive, of the Rev. Gen.Stats. [F.S.A. §§ 26.43–26.47], as construed by this court in the case of State ex rel. Claar v. Branning, 85 Fla. 61, 95 So. 237.

"(2) 2. That the judge of the circuit court of Palm Beach county was not in fact disqualified to sit in said causes, nor was there any valid reason or cause why said judge could not properly hear, try, and determine the same.

"This is not sufficient to impeach the validity of the executive order designating Judge Thomas. Section 3057 of the Rev. Gen.Stats. [F.S.A. § 26.43] provides that, whenever it appears to the Governor of this state that any judge of a circuit court is disqualified in any cause pending in said court, or for any cause cannot properly hear, try, and determine the same, the Governor may appoint and assign any other of the judges of the circuit courts to hold regular or special terms of the court in such

circuit at such time as the Governor may direct, and section 3060 of the Rev.Gen. Stats. [F.S.A. § 26.45] provides that such judge so assigned shall, for the particular case or cases or class of cases, or during the term or part of term named or specified in the assignment, have complete jurisdiction when in the county to which he is assigned as if he were a resident circuit judge, etc. The recital in the Governor's order that it had been officially made known to him that Judge Chillingworth was unable to and could not properly hear, try, and determine certain causes pending in the circuit court for Palm Beach county, Fla., reciting as it does one of the grounds provided by the statutes for the appointment and assignment by the Governor of a judge from another circuit, as provided for and with the powers vested under sections 3057 and 3060 of the Rev.Gen.Stats. [F.S.A. §§ 26.43, 26.45], sufficiently complies with the requirements of the statute to sustain the validity of such executive order.

"(3) 3. That there was no order entered by the judge of the circuit court of Palm Beach county on the minutes of said court certifying his alleged disqualification to sit in petitioners' cause, nor any order entered on such minutes showing any cause for the appointment by the Governor of a special judge to hear the cause of petitioners.

"There is no statute requiring the entry of such an order by the judge before the

Governor shall have authority to act as above set forth. The language of the statute is that, 'Whenever it shall appear to the Governor of this state' that any of the conditions specified in section 3057 exist, he shall have authority to make the appointment and assignment provided for in said section. And it appears here that the executive order was duly entered of record in the minutes of said circuit court of Palm Beach county. See Realty Co. v. Fraleigh-Smith Inv. Co., 90 Fla. 769, 107 So. 174."

State ex rel. Smith v. Gray, supra, another decision by the Supreme Court of Florida, in a short opinion reaffirmed the position taken in the Seaboard Realty Company case and going even further held that the recital in the executive order of the reasons for its issuance was unessential to its validity. The court said:

"This is an application for a writ of prohibition to be directed to Hon. DeWitt T. Gray, as judge of the Fourth judicial circuit of Florida, prohibiting him from assuming jurisdiction to try a criminal cause pending in the circuit court of the Twenty-Third judicial circuit for Seminole county, in which the state of Florida is plaintiff and Forrest Lake and A. R. Key are defendants.

"The Governor of Florida, by executive order dated January 31, A. D. 1928, designated and appointed Hon. DeWitt T. Gray. judge of the Fourth judicial circuit of

Florida, to proceed to Sanford in the county of Seminole in the state of Florida, and thereupon on Monday the 6th day of February, A. D. 1928, and as long thereafter as is necessary, proceed to hold a special term of the circuit court. The order contains the usual provisions as to the powers and prerogatives of the judge of the Twenty-Third circuit for Seminole county being vested in Judge DeWitt T. Gray.

"The petitioner says that, although Hon. W. W. Wright certified to his disqualification as judge to hear and determine the case, he is not in fact nor in law disqualified, and, as the executive order recites that it was made known to the Governor that Hon. W. W. Wright was disqualified, the executive order is ineffectual to vest in Hon. DeWitt T. Gray, judge of the Fourth judicial circuit, the power to sit as judge of the Twenty-Third judicial circuit for Seminole county and to hear and determine said cause.

"(1) The application for the writ of prohibition should be denied because the power is vested in the Governor of this state, whenever it shall appear to him that a judge of one circuit is disqualified in any cause pending in such court or for any cause cannot properly hear and determine the same, to appoint and assign any other judge of a circuit court to hold regular or special terms of the court in such circuit at such times as the Governor may direct.

See Ex parte Daly, 66 Fla. 345, 63 So. 834; Seaboard Realty Co. v. Seaboard All-Florida Ry., 91 Fla. 670, 108 So. 675.

"(2) The recital in the executive order of the reasons for its issuance by the Governor is not essential to the validity of the order under the constitutional and statutory provisions. See section 8, art. 5, Constitution [F.S.A.]; sections 3057, 3060, 3061, Revised General Statutes [F.S.A. §§ 26.43, 26.45, 26.46]."

"Whenever the public business may require," so reads our constitution, the Chief Justice shall designate a judge from another district, or if none be available within a reasonable time, a justice of the Supreme Court, to hold court in any district of the state. There are no conditions attached, save a determination by the Chief Justice that the public business does so require. The provision does not specify how the Chief Justice shall be informed. It does not call for a request from the judge of the district in which the situation invoking a designation exists. Neither does it make any provision for an apportionment of judicial work between the resident and the visiting judge. It is not to be anticipated, however, where the designation is general as here, that any insoluble conflicts of authority or jurisdiction between the two will ever occur.

The standing and character of men elected justices of this Court, each of whom in

turn succeeds to the office of Chief Justice, and of the men who fill the office of district judge in the various districts of the state, themselves are factors which afford a sufficient guaranty that no unseemly situations will arise in transacting judicial business following a designation by the Chief Justice. Cf. Massengill v. City of Clovis, supra. Even in the case at bar, we cannot assume that a division of work between the two judges present and functioning at the same time in the district, as this section of Article 6, significantly and expressly authorizes, was not amicably arranged between them. If contrary to all we have a right to expect, it should develop otherwise, a speedy determination of any conflict can be had by invoking an appropriate remedy in this Court.

No such unseemly situation as counsel for relator visualizes, of having a whole bevy of district judges holding general designations from the resident judge of a given district, or the Chief Justice, descend on a district each clamoring for recognition in the dispatch of business, is likely ever to happen. In the first place, no district judge, or justice of this Court, is going into any district to hold court, unless invited by the resident judge, or sent in under a designation by the Chief Justice, or called in under 1941 Comp. § 19-508, by agreement of counsel following statutory disqualification. And in the second place, the personnel of the district judges is too high even to conceive of any such unseemly conduct on their part.

It is nearly always possible to imagine absurd results or unforeseen hardships and abuses in the execution of any law. But it is not proof a power does not exist to demonstrate that it may be abused. The governors of most of our states possess the pardoning power. In an unthinkable abuse of that power they might on any given day empty every penal institution in the state. And, yet, the fact that they could do so, fails to prove they do not possess the pardoning power. Other instances of the vast powers of our chief executives, even in this state, in declarations of martial law, removal of members of institutional boards and so on, might be cited. To say these powers may be abused is not to say they do not exist.

Here the framers of our constitution saw fit to confer broad powers of designating judges on the Chief Justice. They interposed no condition other than that the public business should so require and left it to him to determine that jurisdictional fact. If the power should be abused, the people who gave it can take it away. Whether abused or not, if displeased with it, they can do so. Only recently, and at a special election on September 20th of this year, the people have taken away from the governor the unlimited power of removal of members of in-

stitutional boards and of State Highway Commission. The will of the people, as expressed in their constitution, is the supreme law of the land.

It is worthy of mention, too, that very likely the people intended this broad power of designation residing in the Chief Justice to be merely complementary to the "superintending control over all inferior courts" reposed in this Court by still another section of Article 6 of the constitution, namely, section 3. The language of this section among other things, states:

"The Supreme Court * * * shall have a superintending control over all inferior courts; * * *."

It is not difficult to see in the broad power of designation reposed in the Chief Justice, the administrative head of the Supreme Court, a very effective and ever present aid in exercising the superintending control over district as well as all other inferior courts, elsewhere reposed in it.

In two cases most relied upon by counsel for relator in support of their position on this phase of the case are Reed v. Bradford, 141 Ark. 201, 217 S.W. 11, and In re Chicago, R. I. & P. Ry. Co., 7 Cir., 162 F.2d 606, 607. We consider neither of them in point. In Reed v. Bradford where a certificate of his disqualification to the governor was a constitutional prerequisite of the power to designate and the county judge did not so certify, it was held there

was no power in the governor to designate. We already have adverted to the fact that no such specific limitation on the power to designate as that mentioned in Reed v. Bradford is present in our constitution—only the requirements of the "public business" to invoke an exercise of the power, and a determination of when such requirements do, left to the determination of the Chief Justice and to him alone. It requires but a quotation from the opinion stating the question involved in the Chicago, R. I. & P. Ry. Co. case to show how different it is from the one we have here. The court said:

"Does Section 18 of the Judicial Code [28 U.S.C.A. §§ 291, 295, 296] invest the senior circuit judge with authority to designate a circuit judge to sit in a *pending* district court suit and thereby displace a sitting district judge, upon said senior circuit judge's determination that 'public interest' requires such action?"

It is not claimed that the justice designated to hold court in Dona Ana County sought to displace the resident judge in the conduct of any pending case. As a matter of fact it is the acts of such justice, more or less administrative in character, in handling the grand jury in session when he arrived, such as receiving indictments in open court, and the performance of incidental judicial duties in connection therewith, that are assailed as void for want of

jurisdiction in him to perform. We hold the declaration of the Chief Justice, in his order of designation, of the jurisdictional facts entitling him to make the designation he did are not open to challenge by relator. This leaves for decision the single question remaining, as hereinabove stated, to which we now turn our attention.

It is argued by counsel for relator that the orders designating a justice of this court to hold court in Dona Ana County, and of this respondent to try relator, both are void because signed at Roswell rather than at Santa Fe, the seat of the Supreme Court. Reference is made to Supreme Court Rule 25, § 4, 1941 Comp. § 19-201(25), subd. 4, reading:

"In the absence of the chief justice the senior justice present at the seat of the court shall preside at all sessions of the court and he is authorized to perform any act which the chief justice could perform, if present in person."

█ We hold there is no merit in this point. In making designations under Const. Art. 6, § 15, the Chief Justice is performing a ministerial act committed to him by the constitution. He does not act as a "court," nor is his act a judicial act. Indeed, in many states, as the reported decisions show, Payne v. Williams, supra, and Reed v. Bradford, supra, this power is committed to the governor of the state rather than the Chief Justice.

█ Arguendo, the contention seems to be that by virtue of this rule, when the Chief Justice is absent from Santa Fe, the seat of the Court, the power of designation otherwise his passes automatically to the next justice in order of seniority, who is present in Santa Fe. It has not been so construed in practice. Indeed, no member of the Court other than the Chief Justice presumes to exercise either his constitutional or statutory power of designation while he is present in the state. No court rule or statute could take the constitutional power from him, nor has his right to exercise it anywhere in the state ever been questioned until now. Counsel for relator agree there is nothing to this claim if the Chief Justice "is not acting in a judicial capacity," or as a "court." We have just held he is not so acting.

The motion to dismiss the petition for writ of prohibition will be sustained and the order to show cause will be discharged.

It is so ordered.

BRICE, C. J., LUJAN, SADLER and COMPTON, JJ., and ARMIJO, District Judge, concur.